We'll reserve the decision and we'll turn to Elias Joseph, Jr. v. USA Good day, Your Honors. My name is Neil Wiesner. I am the attorney for the appellant. Your Honors, I think everybody would concede that what happened here was a horrible thing. A person who was a citizen for two decades, and that's conceded at this point, more than two decades, was deported, imprisoned, twice prosecuted as an alien. As a result of that, among other things, he lost his home, his apartment where he was living, his possessions. If you could speak a little slower, I am more likely to be able to understand what you're saying. I'm sorry, Your Honor. It's probably my nervousness. But anyway, Your Honor, the government has conceded that the decisions of this court that issued while their 12B6 motion was pending are fatal to our claims, which was our perception before the district court. And as you know, we brought the adverse decisions to the attention of the court and said that, as far as we could see, our only recourse was to come up here and see if we can get you to, it's a tough sell, but change your minds. So we are up here. Why do we have to change our mind? Well, I mean, obviously you don't have to, but we think it's just as a matter of policy. What is our mind that has to be changed? Well, look, it's just terrible policy for an egregious harm like this to occur and there be no recourse for a citizen. This is the, if you think of it, a person's citizenship and their presence here in this country, that's the predicate from which all of their rights flow, their constitutional rights, their legal rights, their rights that America grants people. This is a kind of civil or constitutional death penalty when you deport somebody and say, you're not a citizen, you can't be here. And as you know, I mean, we did cite one case that reflected this, but this is a common principle that the duty of care correlates to the risk of harm. I mean, the greater the degree of harm, the greater the duty of care. This court in Nzuzu, I think it was, its recent Nzuzu decision, said they were the only two circuits that had ruled squarely on the matter, had found differently in terms of citizenship, and that the failure to show due care, exercise due care, couldn't under those circumstances be shown. As you know, we have argued for the application of reciprocal. I mean, we think it meets all of the elements. A U.S. citizen, particularly a U.S. citizen of two decades, should not be deported and prosecuted and lose everything, including his constitution. You concede that that's not the law of the circuit, and you think the law of the circuit should change? Yes, Your Honor. Any way we can do that other than going on bark if we agree with you? Well, I think we would have to, if we get even a dissent, we can move for it to be heard en banc. I'm sorry, Your Honor, what? I think you can in any event. Okay. But I think that if we have— There's nothing for us to do. If what you're saying is all you, what you need is for the law to change, then I'm not sure what's left for us to do except to affirm and then have you move for en banc reconsideration of our precedent. Well, Your Honor, forgive me, this was my procedural ignorance. My understanding was I did recognize that we needed an en banc consideration in order to get a change in the law, but I did not want to move and waste the circuit's time. If it's unanimous against us, I think that that would probably be futile. So, in any event, yes, we do think that this is the kind of thing, just like, you know, I think the case we cited, trains don't derail absent negligence. A bomb, a U.S. war plane off to bombs North Korea doesn't drop a bomb on Tempe, Arizona, without some kind of negligence. A U.S. citizen of two decades doesn't get deported without negligence, and we do think that even if we did have to show, that if we had the duty of showing a failure of due care, we think we have the basis for it. This court's decision, this circuit's decision in Ashton certainly gave warning to the government, to immigration, that the law in the two other circuits where it was, the question was adversely decided to us. Counsel? Yes, Your Honor. We would have to decide that the court was wrong in both Nuozo and Watson for you to succeed, right? You were barred by both, so you would need an unbanked decision saying that both of those prior decisions were wrong. If one of them was right, you would be unsuccessful. But, Your Honor, couldn't we also, forgive me, I just forgot my response to what you said, and it was probably a good one. Maybe it will come back. I hope so, I doubt it, but I hope so. But, oh, it may have had something to do with the statute of limitations issue that raised in Watson, and, Your Honor, Mr. Joseph, assuming that he brought his unlawful imprisonment claim, false imprisonment claim, he would have been laughed out of court. He would have been foreclosed. It would have been because he would have had to bring it while he was still facing deportation and charges and being prosecuted. There could be no false imprisonment claim to make. I mean, sure he could have filed it, but you know the government would have said this is ridiculous. At that point, he had pleaded guilty to being an alien, to unlawful entry, which is also, Your Honor, one of the damages we claim. He was facing imprisonment with no termination point in sight. The court was telling him, his lawyers were telling him, his court-appointed lawyers, the government was telling him that he was crazy to think he was a citizen, and he began to doubt the processes of his own mind. I mean, to think, I must be crazy. I must be in la-la land. I mean, his own reasoning, he walked into that courtroom, as the record reflects, with certainty that he was a citizen. But by the time the process ended, he was convinced he was nuts. And, I mean, his- Was he represented by counsel there? Court-appointed counsel. During the time when he pled guilty, he was represented by court-appointed counsel. It so happened I spoke with him up there, and I- In Vermont. Yes. And I think they thought I was nuts, because I was telling him he's a citizen. And, in fact, on the exact facts that he said, I am a citizen, this court implicitly agreed with him in its more recent decision in Ashton. Not Ashton, in Azusa, the one where it found that he had a viable claim for citizenship. He was articulating the right facts. He clearly fit in, but nobody was listening to him. They were- And they convinced him he couldn't see straight, he couldn't figure it out straight, that he was nuts. It was a terrible situation, and he was deported. So, Your Honor, I mean, are there any questions? Okay. You reserve some time. Okay.  May it please the Court. My name is Kathy Vadiareddy, Assistant United States Attorney for the Southern District of New York, and I represent the defendant appellees in this matter. Your Honor, the district court's judgment should be affirmed for three reasons. First, Mr. Joseph failed to timely exhaust his administrative remedy. Mr. Joseph, in fact, concedes that this court's presidential decision in Watson versus United States forecloses this claim. Watson is binding authority and directly applicable to Mr. Joseph's tort claim. How is it directly applicable? Mr. Joseph's final release from detention was on August 2012, and therefore any tort claims relating to his detention accrued by August 2014 or even earlier than that date. Mr. Joseph did not file his administrative tort claim until September 2015, more than two years after his claims had accrued. You take the date that he was released from custody rather than the date when his custody was determined? Am I right? The date of August 2014 is the date of his final release from detention, so any claims that he may have prior to that date should have been actually brought prior to August 2014. So in your view, that's the most favorable possible date from which to begin the limitations period? That's correct, Your Honor. Second, Your Honors, Mr. Joseph's- Favorable to him. Yes, favorable to Mr. Joseph. Second, Mr. Joseph's tort claims against the United States relating to his detention and removal should also be dismissed because the government exercised due care. The Federal Tort Claims Act explicitly states that the United States has not waived sovereign immunity for actions of its officers taken while reasonably executing a statute. This court's decision in Nzusi v. United States made clear that the due care exception to the Federal Tort Claims Act would apply here. The facts in Nzusi v. United States, the Nzusi decision that was issued in 2017, are nearly identical to the facts of this case. In both instances, the applicants were- the government decided that the applicants did not derive citizenship because they had not obtained lawful permanent resident status prior to the age of 18. The court in Nzusi determined that based on the law in existence at that time, the government had acted reasonably, which was two circuit court decisions. Here- That case was a summary order, was it? Yes, Your Honor. It is not a precedential decision. However, the rationale should apply here. And Mr. Joseph's claims under the Federal Tort Claims- More precedential, non-precedential decisions, I guess. Yes. But the rationale should apply in this case as well because the facts are nearly identical to those in Nzusi. Following, Your Honor, Mr. Joseph has abandoned- What's the relationship between the two Nzusis? Your Honor, in 2013, this court decided Nzusi, and that was the case in which the court held that an applicant who was not a lawful permanent resident prior to the age of 18 could still derive citizenship. And in that case was the reason why Mr. Watson later had become a United States citizen through his derivative citizenship status or through his mother. And Nuozo, too, decided the due care issue. I'm sorry? Nuozo, too, decided the due care issue. Correct. So after Nzusi won and after Nzusi had become a United States- He then sued the federal government under the Federal Tort Claims Act in Nzusi, too. And in Nzusi, too, the court held that the due care exception applied because the law at the time, which was the two circuit court decisions, had determined that if a person was not a lawful permanent resident prior to the age of 18, he could not derive citizenship, and therefore the government had acted reasonably. And the same facts apply here. Finally, Your Honor, Mr. Joseph has abandoned the remainder of his claims. Mr. Joseph cannot unilaterally bifurcate his claims and bypass the district court's consideration of arguments that it wants to reserve for a later date. And both the district court- He did that in order to make this appealable. He did it in order to be able to appeal now rather than wait. Your Honor, he could have addressed all of his arguments in the district court briefing and still brought these arguments before this court. In addition, in the court's briefing, initial briefing before this court, he again failed to address the merits of his arguments or of his claims other than those that were directly applicable to Nzusi or Watson. And for all of these reasons, we respectfully request that the appeal be dismissed. Thank you. Your Honor, Mr. Joseph received his certificate of citizenship on May 5, 2015. He did not have his conviction saying that he entered the country unlawfully as an alien vacated until July 13, 2015. That is the time that we think triggers the statute of limitations. Because prior to that, had he made a claim for false imprisonment, they would just say, you have a conviction, Mr. Joseph, for entering as an alien. How can you come to this court and say, no, no, you're a citizen? It's res judicata. It's done. There's a judgment. So that's what we think is the triggering time. Now, Your Honor, most of these actions, certainly his arrest, his detention, although it came down into New York, it occurred in Vermont. Now, from what I understand, under Vermont law, I can give you the statute, simple negligence on the part of law enforcement is actionable. Now, I do understand that we do have to show a lack of due care, but that's synonymous with negligence. We do think, though, that just as a matter of policy, this Court should not allow such egregious harm to occur when a more cautious approach, I mean, this Court's decision in Ashton, which predated its Nisuzu decision, which finally determined it, clearly should have given warning to the defendants that he may have been a citizen, at worst, may have been a citizen, and that his claims were cognizable and valid. And nevertheless, they just simply rushed him through the system. They detained him. He lost everything. And as you know, immigration did conceive that he's been a citizen since 1991, but that happened in 2015 after his life was destroyed. We think that our government is better than that. We think that our government and this Court should allow remedies to people that are wrongfully harmed. Thank you, Your Honor. Thanks very much. We'll reserve the decision.